UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL No. 2327 |
| THIS DOCUMENT RELATES TO THE CASES LISTED BELOW | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

| | |
|---|---|
| *Mullins, et al. v. Ethicon, Inc., et al.* | 2:12-cv-02952 |
| *Sprout, et al. v. Ethicon, Inc., et al.* | 2:12-cv-07924 |
| *Iquinto v. Ethicon, Inc., et al.* | 2:12-cv-09765 |
| *Daniel, et al. v. Ethicon, Inc., et al.* | 2:13-cv-02565 |
| *Dillon, et al. v. Ethicon, Inc., et al.* | 2:13-cv-02919 |
| *Webb, et al. v. Ethicon, Inc., et al.* | 2:13-cv-04517 |
| *Martinez v. Ethicon, Inc., et al.* | 2:13-cv-04730 |
| *McIntyre, et al. v. Ethicon, Inc., et al.* | 2:13-cv-07283 |
| *Oxley v. Ethicon, Inc., et al.* | 2:13-cv-10150 |
| *Atkins, et al. v. Ethicon, Inc., et al.* | 2:13-cv-11022 |
| *Garcia v. Ethicon, Inc., et al.* | 2:13-cv-14355 |
| *Lowe v. Ethicon, Inc., et al.* | 2:13-cv-14718 |
| *Dameron, et al. v. Ethicon, Inc., et al.* | 2:13-cv-14799 |
| *Vanbuskirk, et al. v. Ethicon, Inc., et al.* | 2:13-cv-16183 |
| *Mullens, et al. v. Ethicon, Inc., et al.* | 2:13-cv-16564 |
| *Shears, et al. v. Ethicon, Inc., et al.* | 2:13-cv-17012 |
| *Javins, et al. v. Ethicon, Inc., et al.* | 2:13-cv-18479 |
| *Barr, et al. v. Ethicon, Inc., et al.* | 2:13-cv-22606 |
| *Lambert v. Ethicon, Inc., et al.* | 2:13-cv-24393 |
| *Cook v. Ethicon, Inc., et al.* | 2:13-cv-29260 |
| *Stevens v. Ethicon, Inc., et al.* | 2:13-cv-29918 |
| *Harmon v. Ethicon, Inc., et al.* | 2:13-cv-31818 |
| *Snodgrass v. Ethicon, Inc., et al.* | 2:13-cv-31881 |
| *Miller v. Ethicon, Inc., et al.* | 2:13-cv-32627 |
| *Matney, et al. v. Ethicon, Inc., et al.* | 2:14-cv-09195 |
| *Jones, et al. v. Ethicon, Inc., et al.* | 2:14-cv-09517 |
| *Humbert v. Ethicon, Inc., et al.* | 2:14-cv-10640 |
| *Gillum, et al. v. Ethicon, Inc., et al.* | 2:14-cv-12756 |
| *Whisner, et al. v. Ethicon, Inc., et al.* | 2:14-cv-13023 |
| *Tomblin v. Ethicon, Inc., et al.* | 2:14-cv-14664 |

| | |
|---|---|
| *Schepleng v. Ethicon, Inc., et al.* | *2:14-cv-16061* |
| *Tyler, et al. v. Ethicon, Inc., et al.* | *2:14-cv-19110* |
| *Kelly, et al. v. Ethicon, Inc., et al.* | *2:14-cv-22079* |
| *Lundell v. Ethicon, Inc., et al.* | *2:14-cv-24911* |
| *Cheshire, et al. v. Ethicon, Inc., et al.* | *2:14-cv-24999* |
| *Burgoyne, et al. v. Ethicon, Inc., et al.* | *2:14-cv-28620* |
| *Bennett, et al. v. Ethicon, Inc., et al.* | *2:14-cv-29624* |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PERMIT LIVE TRIAL TESTIMONY VIA CONTEMPORANEOUS TRANSMISSION**

**I.     Issue Presented**

Under Federal law, this Court may permit live video testimony for good cause in compelling circumstances, but cannot subpoena an out-of-state witness to appear at trial in West Virginia. Defendants refuse to produce their employees Dan Smith and Laura Angelini of New Jersey for Plaintiffs' case. This bellwether trial will affect thirty-seven Plaintiffs and inform thousands of claims in the Ethicon Multidistrict Litigation. Do compelling circumstances and good cause exist to support the use of live videoconferencing for these witnesses?

**II.    Introduction**

Plaintiffs request this Court to allow live video testimony during trial for Defendants' current employees Dan Smith and Laura Angelini. Dan Smith has worked as an Engineer at Ethicon for over 30 years. He was the project leader on development for both the TVT-O and TVT-Secur, products that employ the same mesh as the TVT. Indeed, Ethicon has designated Mr. Smith has a 30(b)(6) designee, or the person most knowledgeable in the company, on more than 25 topics related to the design of the TVT, including: the operating procedures associated with the design on the TVT, the complete design history file of the TVT, and the specifics of all testing related to the TVT from a design perspective.  Further, Mr. Smith was a member of the "matrix" project team, which looked at alternative meshes to the TVT Prolene mesh in order to

2

potentially reduce complications. Mr. Smith also contributed to both the Scion and TVT-O-PA (TOPA) project teams. The Scion and TOPA were next-generation SUI sling products that utilized the lightweight, large pore Ultrapro mesh instead of the heavyweight, small pore Prolene mesh used in the TVT. Mr. Smith has intimate knowledge of the design of the TVT that will be essential for the jury to determine facts at issue during trial.

Likewise, Laura Angelini has worked for Johnson & Johnson or its subsidiaries for over 21 years, and Ethicon employees have referred to her as the "godmother of TVT." Ms. Angelini was the Director of Marketing at the time the TVT was launched in the United States, and later became the Vice President of Marketing of Gynecare, the division of Ethicon that advertises the TVT. Ms. Angelini developed and implemented strategies and communication plans to promote the TVT. And, Ethicon has designated Ms. Angelini as the person most knowledgeable on a number of subjects, including the mesh that was used in the TVT clinical study to support FDA clearance of the device in 1998, as well as the mesh that was used in the original 1998 Ulmsten TVT study, which became the cornerstone of Ethicon's TVT marketing program. She was a member of the "TVT improvement project" task force in 1998, which was created to look at ways to improve the TVT mesh, including changing the cutting method of the mesh to reduce rough edges and minimize abrasion. Ethicon has also designated Ms. Angelini as the person most knowledgeable on Ethicon's payments that were contingent on the results of the Ulmsten 1998 study, as well as other Ethicon payments to consultants.

These witnesses possess knowledge that is crucial to this bellwether case. Defendants' refusal to produce the requested witnesses is an attempt to gain a tactical advantage over Plaintiffs, as testifying by live video would not create an undue burden on these witnesses. Indeed, Defendants have produced Mr. Smith and Ms. Angelini before and have indicated their

intent to call these same people for live testimony during the defense's case – but only if *they* choose to do so. This intention belies any "undue burden" argument. Furthermore, if the trial proceeded without live video testimony, the jury would hear from the same witnesses in different mediums – once via videotaped deposition testimony during the Plaintiffs' case, and once via live testimony in Defendants' case. Thus, compelling these witnesses to testify live by video will not unduly burden Defendants, but will avoid an inequitable and inefficient presentation to the jury.

Alternatively, if this Court is not inclined to allow testimony by live video feed, Plaintiffs respectfully request that the Court: (1) order a trial deposition of each witness to be used by both Plaintiffs and Defendants at trial in lieu of live testimony; and (2) bar Defendants from using live testimony of any witness they refuse to make available for Plaintiffs' case.

### III. Background

This trial is a consolidation of thirty-seven cases, all of which involve West Virginia Plaintiffs who were implanted with and suffered injuries from Ethicon's TVT, a transvaginal mesh device used to treat stress urinary incontinence. These cases are part of the Multidistrict Litigation 2327, in which over 23,000 cases are filed against Defendants regarding their transvaginal mesh products. This consolidated trial will focus on the issues of negligent design defect and strict liability design defect. The outcome of this case will not only control the design defect claims for these thirty-seven Plaintiffs, but will also impact the thousands of other design defect claims concerning the TVT.

### IV. Meet and Confer

Plaintiffs' counsel requested that Defendants' witnesses appear live, or that Defendants agree to permit a live video. Defendants refused both options.

V. **Argument and Authorities**

A. **The Federal Rules enable this Court to allow live video testimony at trial.**

Under the Federal Rules of Civil Procedure, this Court has the clear authority to order witnesses to testify live from a remote location: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a).

If the Court orders live testimony of witnesses by contemporaneous transmission from a different location, Rule 45 provides:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
> > (i) is a party or a party's officer; or
> > (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c).

This Court should allow live video testimony for Dan Smith and Laura Angelini, as these corporate employees live outside West Virginia, and Defendants refuse to produce them for Plaintiffs' case at trial. Because live video testimony will enable the jury to hear the best form of evidence available without unduly burdening Defendants, Plaintiffs' request should be granted.

B. **Good cause and compelling circumstances exist to permit testimony via contemporaneous videoconferencing.**

Live video testimony provides many of the benefits conferred by live, in-person testimony that are lost in deposition. The Supreme Court, MDL courts, and the advisory

committee to the Federal Rules of Civil Procedure consider live, in-person testimony to be the best evidence during trial, as it permits the fact-finder to more accurately evaluate the witness's truthfulness, while the courtroom setting exerts pressure for honesty.[1] Testimony via contemporaneous video likewise permits the fact-finder to "see the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration'" in the unpredictable courtroom environment.[2]

Courts have been permitting testimony via live remote transmission for over two decades.[3] Most recently, the Western District of Wisconsin and the Western District of North Carolina both permitted the use of live video transmission for corporate witnesses in trials involving transvaginal mesh.[4] Indeed, in *Hall v. Boston Scientific*, the Wisconsin District Court noted that any burden imposed on the corporate witnesses would be minimal compared to the "benefits of live testimony over deposition testimony."[5]

In 2006, the Eastern District of Louisiana in *In Re Vioxx Products Liability Litigation*[6] considered five factors to determine whether to allow live video testimony:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.[7]

---

[1] *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006); Fed. R. Civ. P. 43 advisory committee note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").
[2] *Vioxx*, 439 F. Supp. 2d at 644 (quoting *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir. 1946)).
[3] See, e.g., *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 1988 U.S. Dist. LEXIS 19630 (W.D. Wash. Aug. 9, 1988); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424, 426 (D.P.R. 1989).
[4] *Hall v. Boston Sci. Corp.*, 3:15-cv-00338-bbc (Order dated Sep. 9, 2015) (attached as Ex. A); *Winebarger v. Boston Sci. Corp.*, 5:15-cv-00057 (Text-Only Order dated Sep. 18, 2015) (Docket attached as Ex. B).
[5] Ex. A, Hall Order Permitting Live Video Testimony, at 3.
[6] 439 F. Supp. 2d 640 (E.D. La. 2006).
[7] *Vioxx*, 439 F. Supp. 2d at 643 (citing *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 1988 U.S. Dist. LEXIS 19630 (W.D. Wash. Aug. 9, 1988)).

The *Vioxx* Court found that these factors weighed in favor of having the witness testify by contemporaneous videoconferencing because: the defendant had control over the witness who was an upper-level employee, the case was a bellwether trial in an MDL involving thousands of lawsuits, the defendant's refusal to produce the witness was purely tactical, and the defendant would not suffer prejudice by videoconferencing its own worker.

Recently, the Honorable Judge Rebecca Doherty allowed live video testimony for the defendant's current and former employees that it refused to make available for the first *Actos* 2014 MDL bellwether trial in the Western District of Louisiana.[8] In its decision, the Court noted that "a trial, itself, is a dynamic, ever evolving process and the use of contemporaneous transmission of live testimony better allows for the witness and counsel to be responsive to the inevitable, unexpected developments and shifts that always occur during trial," thereby benefitting the factfinder much more than an edited, static videotape.[9]

Here, the *Vioxx* factors mandate the use of live video testimony for Dan Smith and Laura Angelini. *First*, Defendants have control over Mr. Smith and Ms. Angelini, as they are Defendants' current employees. *Second*, the need for live satellite testimony is heightened here, where the outcome of this bellwether case will decide issues for the thirty-seven Plaintiffs represented and inform thousands of other TVT cases in the Ethicon MDL. Further, the corporate depositions at issue were conducted in advance of this trial consolidation and relate to numerous different products, injuries, and dates. Any videotaped deposition testimony would be spliced together from different days with different examiners, creating a hodge-podge examination that would be a disservice to the jury. Indeed, the focused scope of this MDL trial weighs in favor of allowing testimony by contemporaneous transmission.

---

[8] *In re Actos (Pioglitazone) Prods. Liab. Litig.*, MDL No. 6:11-md-2299 (W.D. La. 2014) (attached as Ex. C).
[9] *Id.* at 16.

*Third*, any opposition to allowing witnesses to testify remotely is for a purely tactical advantage. The corporate employees would not be required to travel long distances and would be minimally inconvenienced. Plaintiffs have already completed videotaped depositions of Ethicon corporate witnesses via simultaneous video transmission without incident, including the depositions of Laura Angelini and Brian Kanerviko. *Fourth*, Defendants would not suffer any prejudice in having these witnesses testify by live video. The witnesses are corporate employees, and so their testimony should not surprise Defendants. Indeed, both of these witnesses have previously testified in this litigation. Lastly, given the MDL bellwether dynamic, the fifth factor is essentially an extension of the second factor, as this action is complex and involves multiple parties from multiple states, all of which demands flexibility and supports the use of live video testimony.

Videoconferencing allows the parties to secure live testimony from different locations, contemporaneously, while minimizing the inconvenience to those witnesses who might otherwise need to travel a considerable distance to participate briefly at trial. This case is similar to the *Vioxx* litigation, which involved a "bellwether trial for a MDL involving thousands of lawsuits over the damage allegedly caused by a drug prescribed to millions of patients in every state of the nation" – a fact that the *Vioxx* Court found to favor testimony via contemporaneous transmission.[10] In this case, like in *Vioxx*, the totality of the factors supports the use of testimony via contemporaneous transmission. Such live remote testimony will enable the Plaintiffs to present the most accurate evidence possible in this consolidated trial, while minimally affecting the Defendants. Therefore, Plaintiffs respectfully request the Court to allow live video testimony for Dan Smith and Laura Angelini, as they are key corporate witnesses who will help the jury

---

[10] *Vioxx*, 439 F. Supp. 2d at 643.

determine crucial facts.

**VI.  Conclusion**

The Court should permit live video testimony for Defendants' employees, Dan Smith and Laura Angelini, whom Defendants refuse to make available for trial. Allowing live video testimony would provide a benefit to the jury in determining facts at issue in this complex, multidistrict litigation that far outweighs any minimal burden such testimony would put on the Defendants. As such, Plaintiffs' request should be granted.

Alternatively, Plaintiffs request that the Court: (1) order a trial deposition of each witness to be used at trial; and (2) bar Defendants from using live testimony of any witness it refuses to make available for Plaintiffs' case.

Dated: October 30, 2015                                  Respectfully submitted,

/s/ Fidelma L. Fitzpatrick
Fidelma L. Fitzpatrick
Motley Rice LLC
321 S. Main St., Suite 200
Providence, RI  02903
Phone: 401-457-7700
Fax: 401-457-7708
ffitzpatrick@motleyrice.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 30, 2015, I electronically filed the foregoing document with the Clerk of the court using the CM/ECF filing system, which will send notification of such filing to the CM/ECF participants registered to receive service.

                                                 /s/ Fidelma L. Fitzpatrick  
                                                 Fidelma L. Fitzpatrick  
                                                 Motley Rice LLC  
                                                 321 S. Main St., Suite 200  
                                                 Providence, RI 02903  
                                                 Phone: 401-457-7700  
                                                 Fax: 401-457-7708  
                                                 ffitzpatrick@motleyrice.com