IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERRESKI MULLINS, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO.   2:12-cv-02952

ETHICON, INC., et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER
(Order re: Ethicon's Motion for Reconsideration)

      Pending before the court is a Motion to Reconsider Alternative Design Ruling or, in the Alternative, Motion to Certify Question to West Virginia Supreme Court of Appeals [ECF No. 819] filed by the defendants Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon"). The plaintiffs filed a Response [ECF No. 903], and Ethicon filed a Reply [ECF No. 922]. For the reasons provided below, Ethicon's Motion for Reconsideration is **GRANTED**, and Ethicon's alternative Motion to Certify Question is **DENIED as moot**.

I.    Background

      This case represents the consolidation of 31 out of nearly 28,000 cases filed against Ethicon. The Ethicon MDL is one of seven MDLs assigned to me related to pelvic mesh, collectively encompassing nearly 58,000 cases. This action involves thirty-one West Virginia plaintiffs who were implanted with Tension-free Vaginal

Tape ("TVT"), a mesh product manufactured by Ethicon to treat stress urinary incontinence ("SUI"). These cases have been consolidated on all claims. *See* Pretrial Order No. 184 [ECF No. 25] ("PTO"); Fourth Am. Docket Control Order [ECF No. 258].

On August 4, 2015, I entered a Memorandum Opinion & Order [ECF No. 38] clarifying PTO No. 182 and PTO No. 184.[1] Relevant to the issue *sub judice*, I ruled that "there is no West Virginia authority requiring plaintiffs to prove, as part of their *prima facie* case, that [a] proposed safer alternative design would have reduced an individual plaintiff's specific injuries." Mem. Op. & Order 17. Further, I determined that "plaintiff-specific information is not required to develop or defend against state-of-the-art evidence of a safer alternative design." *Id.* Subsequent to my ruling, the Supreme Court of Appeals of West Virginia published its *West Virginia Pattern Jury Instructions for Civil Cases: Instructions on the Law in Plainer Language* (2016 ed.) ("PJI"). The PJI contains an entire section dedicated to products liability law in West Virginia, and Ethicon now argues that the PJI contravenes my August 4, 2015, ruling.

## II. Legal Standard

"An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991). Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the

---

[1] These Orders discussed the initial scope of this consolidation.

2

claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). Any party may move for reconsideration of an interlocutory order "at any time prior to the entry of a final judgment," and the court may review its own interlocutory orders sua sponte. *Fayetteville*, 936 F.2d at 1472; *see also Cap. Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (observing that Rule 54(b) recognizes the district court's inherent power to reconsider an interlocutory order as justice requires). Moreover, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Instead, reconsideration of an interlocutory order is "committed to the discretion of the district court." *Id.* at 515.

### III. Discussion

Ethicon bases its Motion on the PJI's statement of law regarding the necessity of establishing the existence and remedial efficacy of an alternative, feasible design in a strict liability design defect products liability case. *See generally* Mot.; W. Va. P.J.I. § 411. Specifically, the West Virginia Supreme Court has adopted the following pattern jury instruction:

> There are many designs which, although they may eliminate a particular risk, are not practicable to produce. To prove that a design is defective, [*name of plaintiff*] must prove that there was an alternative, feasible design that eliminated the risk that injured [*him/her*].

W. Va. P.J.I. § 411. Ethicon argues that § 411 demonstrates that the West Virginia

3

Supreme Court understands the law of the state to require a plaintiff to prove that (1) there was an alternative, feasible design and that (2) such an alternative design would have eliminated the very risk that injured the plaintiff.

Ethicon points to § 411's "Notes and Sources" provision to argue that this requirement is actually not a new pronouncement of law because the drafters of the instruction specifically rely on two, decades-old, West Virginia Supreme Court cases: *Morningstar v. Black & Decker*, 253 S.E.2d 666 (W. Va. 1979) and *Church v. Wesson*, 385 S.E.2d 393 (W. Va. 1989) (per curiam). Of course, *Morningstar* pronounced the general legal standards for establishing defective product strict liability under West Virginia law:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.
>
> The term "unsafe" imparts a standard that the product is to be tested by what the reasonably prudent manufacturer would accomplish in regard to the safety of the product, having in mind the general state of the art of the manufacturing process, including design, labels and warnings, as it relates to economic costs, at the time the product was made.

Syl pts. 4 & 5, *Morningstar*, 253 S.E.2d at 667. And as for *Church*, the West Virginia Supreme Court in that case affirmed the trial court's order of a directed verdict in the defendant's favor because the plaintiff failed to prove the existence of an alternative, feasible design. *See Church*, 385 S.E.2d at 396 (ruling that the appellant had failed to establish a prima facie right of recovery). Thus, Ethicon argues that § 411 of the

4

PJI should be given "particular weight" because it asseverates to be grounded in two published decisions of the state's highest court. *See* Mot. 3.

The plaintiffs present several arguments in opposition to Ethicon's Motion: (1) the PJI is optional and not binding on courts, (2) the PJI applies to only *non-consolidated* trials in which a plaintiff *chooses* to "defend" her claim by alleging a safer alternative design, and (3) a plaintiff may choose among several pathways to prove design defect.

I readily agree with the plaintiffs' first argument that the PJI is optional and not binding on courts. As shown in the PJI's Preface—written in part by Chief Justice Menis E. Ketchum II—the drafters emphatically state, "These are pattern jury instructions that were written to help trial judges and lawyers instruct the jury in a civil case. THEY ARE NOT BINDING ON THE TRIAL JUDGE." W. Va. P.J.I. at iii. Moreover, the drafters point out, "On appeal, the Supreme Court is not bound by the correctness of these pattern instructions." *Id.* Yet in the wake of this caveat, the drafters offer the following consolation for persons wishing to find authoritative benefit in using the PJI: "Although these instructions are not binding, they have gone through multiple edits and revisions after extensive research and editing by the reporters, the review committees, Judge Alsop, and Justice Ketchum. In addition, there was an extended effort to put the instructions in plain language that can be understood by a lay jury." *Id.* Thus, the drafters forcefully indicate that the PJI is not meant to infringe upon the power of the state courts to interpret the law. Instead, the

5

PJI offers a distilled, simplified statement of the law as interpreted by the drafters—and backed by the blessing of the West Virginia Supreme Court.

At best, the plaintiffs ask me to simply ignore § 411 because it is not binding, and at worst, the plaintiffs ask me to find that § 411 is an incorrect statement of West Virginia law. I will do neither. "[A] federal court sitting in diversity has a duty to apply the operative state law as would the highest court of the state in which the suit was brought." *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). "In predicting a decision of the state's highest court we can further consider, among other things, canons of construction, restatements of the law and treatises . . . , recent pronouncements of general rules or policies by the state's highest court . . . or even that court's well considered dicta." *Id.* As discussed above, the PJI was written by lawyers, judges, and a justice of the West Virginia Supreme Court and was adopted after extensive research, editing, and committee review. The Chief Justice of West Virginia is the official reporter of the PJI, and the official seal of the West Virginia Supreme Court is emblazoned on the PJI's cover and title page. Moreover, the West Virginia Supreme Court owns the copyright to the PJI and charges a fee for copies. *See* W. Va. P.J.I. at ii & iii (stating that purchasing a single set of instructions costs $95). Thus, while the PJI is certainly not binding precedent in the way a published opinion is, the persuasive force behind the PJI in helping me predict how the West Virginia Supreme Court would rule on this issue is substantial. Accordingly, I will carefully consider the persuasive weight of the PJI in ruling upon

Ethicon's Motion.

The plaintiffs next argue that the PJI, "by its express terms," applies only in a non-consolidated trial context and only when a plaintiff "chooses to defend her design defect claim by advocating a safer alternative design." Resp. 1 (emphasis omitted). The plaintiffs provide no support for this conclusion other than to simply cite to the PJI. However, § 411 does not discuss consolidation of cases but instead outlines what a plaintiff must prove to establish a defective design. *See* W. Va. P.J.I. § 411. Similarly, § 411 does not permit a plaintiff to *choose* anything. Instead, the instruction states, "To prove that a design is defective, [*name of plaintiff*] must prove that there was an alternative, feasible design that eliminated the risk that injured [*him/her*]." *Id*. Accordingly, the PJI, by its express terms, states that any plaintiff advancing a design defect strict liability claim "must" prove his or her case by demonstrating the existence and remedial efficacy of an alternative, feasible design. *See id*. The plaintiffs' argument on this point is meritless and unsupported.

Last, the plaintiffs argue that, when read in context with the other design defect pattern instructions and relevant case law, they may choose alternative pathways to proving their cases. Specifically, the plaintiffs argue that they may prove their respective cases by "choosing" to apply the risk-utility test *or* by "choosing" to establish the existence and remedial efficacy of an alternative, feasible design. *See* Resp. 4–5. The plaintiffs state the following:

> Defendants have expressly admitted that the presence of a safer, alternative design can establish a design defect claim. Moreover, this

7

> state's law is clear that a design defect claim can prevail even in the absence of such an alternative. Thus, should plaintiffs choose to defend their design defect claim by advocating a safer, alternative design, the instruction defendants propose is appropriate. But this is by no means mandatory in establishing a design defect claim under West Virginia law.

*Id.* (citation omitted).[2] As an initial point, I found no indication that Ethicon "admitted" that merely satisfying the alternative, feasible design standard announced in § 411 would, itself, *establish* a design defect claim. As for the plaintiffs' argument that they may "choose" how the law will apply to their strict liability design defect claims, they offer no legal authority to support such a conclusion—and even so, it is an illogical proposition.

To understand the law applied to design defect strict liability claims in West Virginia, I believe it is important to examine what the PJI states regarding the elements of the *whole* cause of action. First, § 409 lays out the essential factual elements of a design defect claim:

> **§ 409. Design Defect—Essential Factual Elements**
>
> [*Name of plaintiff*] claims the [*name of product*]'s design injured [*him/her*]. To establish this claim, [*name of plaintiff*] must prove all of the following:
>
> 1. That [*name of defendant*] made the [*name of product*]; and
>
> 2. That [*name of plaintiff*] was harmed while using the [*name of product*] in a reasonably foreseeable way; and
>
> 3. That the [*name of product*]'s design was defective; and

---

[2] The plaintiffs' use of the phrase "choose to defend their design defect claim" is puzzling given that the plaintiffs bear the burden of proof in their respective cases.

> 4. That the [*name of product*]'s defective design was a proximate cause of [*name of plaintiff*]'s injury.

W. Va. P.J.I. § 409.[3] Second, § 410 affirms the use of the risk-utility test under West Virginia law when assessing the defectiveness of a product's design:

> **§ 410. Design Defect—Risk Utility Test**
>
> To determine whether a design was defective, you must decide if the benefits of the design outweigh the risks. To make this decision, you should consider the following:
>
> 1. The potential harm resulting from the use of the [*name of product*]; and
>
> 2. The likelihood that the harm would occur; and
>
> 3. The feasibility of an alternative, safer design at the time of manufacture; and
>
> 4. The cost of an alternative design; and
>
> 5. The disadvantages of an alternative design; and
>
> 6. [*Other relevant factor(s)*].

W. Va. P.J.I. § 410.[4] Thus, three of the five enumerated factors a juror should consider in evaluating the balance between the risks and benefits of a product require consideration of an alternative, feasible design. Finally, § 411 ties everything together by instructing the jury on what exactly an alternative, feasible design must

---

[3] The PJI cites *Morningstar*, 253 S.E.2d at 682–83, as its source for this instruction.

[4] The PJI cites *Morningstar*, 253 S.E.2d at 681 n.20, as its source for this instruction.

9

achieve:

> ### § 411 Design Defect—Necessity of an Alternative, Feasible Design
>
> There are many designs which, although they may eliminate a particular risk, are not practicable to produce. To prove that a design is defective, [*name of plaintiff*] must prove that there was an alternative, feasible design *that eliminated the risk that injured* [*him/her*].

W. Va. P.J.I. § 411 (emphasis added).[5] Thus, §§ 409–411 work together to state the law in plain language regarding strict liability design defect claims. No section works independently but works instead to provide meaning to the other sections. Indeed, a jury would not be properly instructed on the requirements of the claim if § 409 was not provided to enumerate the claim's elements of proof, if § 410 was not provided to list the factors to be considered for defectiveness, and if § 411 was not provided to explain what an alternative, feasible design must actually achieve.

It is also worth noting that § 411 does not require a plaintiff to show specific causation. A design defect is not established with specific causation evidence. *See Rheinfrank v. Abbott Labs., Inc.*, 137 F. Supp. 3d 1035, 1040 (S.D. Ohio 2015) (Dlott, J.); *Keffer v. Wyeth*, 791 F. Supp. 2d 539, 548–49 (S.D. W. Va. 2011) (Copenhaver, J.); *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 895, 901 (E.D. Va. 2010) (Ellis, J.). Whether a product's design is defective is an inquiry separate from causation. The risk-utility test assesses the balance between an alleged risk (based on the plaintiff's theory of

---

[5] The PJI cites *Morningstar*, 253 S.E.2d at 666, and *Church*, 385 S.E.2d at 396, as its sources for this instruction. The PJI states that the Court in *Church* relied "upon Syl. Pt. 4 of *Morningstar* to uphold a directed verdict for defendant, in a strict liability context, on the ground that the plaintiff had failed to establish feasibility of a proffered alternative design." W. Va. P.J.I. § 411.

defectiveness) and the product's overall usefulness; evidence of an alternative, feasible design informs this inquiry. *See* 1 David G. Owen & Mary J. David, *Owen & Davis on Products Liability* § 8:13 (4th ed. 2014) ("[T]he design defect issue actually litigated is a *micro*-balance of the pros and cons of the manufacturer's failure to adopt some design feature that would have prevented the plaintiff's harm . . . ."). Once the trier of fact determines that the plaintiff has satisfied the risk-utility test, the product's design is considered defective as to the design feature singled-out by the plaintiff. To prevail, however, the plaintiff must still satisfy the entirely separate issue of whether the defective design *proximately caused* the plaintiff's injury. These steps must be repeated for each design feature that a plaintiff alleges is defective.

My inescapable conclusion is that, in a West Virginia strict liability design defect products liability case, a plaintiff must prove that there was an alternative, feasible design—existing at the time of the product's manufacture—that would have eliminated the *risk* that injured the plaintiff. This interpretation is not in conflict with the binding precedent of the West Virginia Supreme Court; instead, it appears to clarify what was already required. *See Church*, 385 S.E.2d at 394–96 (ruling that the appellant had failed to establish a prima facie right of recovery because he had not provided evidence of an alternative, feasible design); *see also Morningstar*, 253 S.E.2d at 682 ("We believe that a risk/utility analysis does have a place in a tort product liability case by setting the general contours of relevant expert testimony concerning the defectiveness of the product. . . . Through [the expert's] testimony the

11

jury is able to evaluate the complex technical problems relating to product failure, safety devices, *design alternatives*, the adequacy of warnings and labels, as they relate to economic costs." (emphasis added)). Accordingly, I **FIND** that I must reconsider my previous ruling on the issue.

## IV. Conclusion

"The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n, Inc.*, 326 F.3d at 515. To the extent it requests reconsideration of part of the court's August 4, 2015, Memorandum Opinion & Order [ECF No. 38], Ethicon's Motion [ECF No. 819] is **GRANTED**. The court **FINDS** that in a West Virginia strict liability design defect products liability case, a plaintiff must prove that there was an alternative, feasible design—existing at the time of the product's manufacture—that would have eliminated the risk that injured the plaintiff. To the extent it requests the court to certify a question to the West Virginia Supreme Court, Ethicon's Motion [ECF No. 819] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                               ENTER:      December 9, 2016

*[signature: Joseph R. Goodwin]*
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE