IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERRESKI MULLINS, et al.,

               Plaintiffs,

v.                               CIVIL ACTION NO.   2:12-cv-02952

ETHICON, INC., et al.,

               Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion to Strike Plaintiffs' Supplemental Expert Reports [ECF No. 1534]. The plaintiffs filed their Response [ECF No. 1570], and the defendants filed their Reply [ECF No. 1596]. For the reasons provided below, the Motion is **GRANTED**.

I.   **Background**

In June 2016, the Supreme Court of Appeals of West Virginia published its *West Virginia Pattern Jury Instructions for Civil Cases: Instructions on the Law in Plainer Language* (2016 ed.) ("PJI"). Subsequent to the PJI's publication, Ethicon filed a Motion to Reconsider [ECF No. 819], wherein Ethicon requested that the court reconsider its prior ruling regarding the necessity of proving the existence of a safer, alternative design as part of a plaintiff's prima facie case in a strict products liability design defect case under West Virginia law. On December 9, 2016, the court entered

its Memorandum Opinion & Order [ECF No. 1525], reconsidering its prior Order [ECF No. 38] and ruling that "in a West Virginia strict liability design defect products liability case, a plaintiff must prove that there was an alternative, feasible design— existing at the time of the product's manufacture—that would have eliminated the risk that injured the plaintiff." Mem. Op. & Order, Dec. 9, 2016, at 12; *see also* Mem. Op. & Order, Aug. 4, 2015 [ECF No. 38].

On January 12, 2017, five months after the close of discovery, the plaintiffs served four supplemental general expert reports, as well as a supplemental case-specific expert report in each of these consolidated cases. *See* Defs.' Mot. 1. Ethicon argues that these supplemental reports are untimely and, if permitted, will require the reopening of expert discovery and the continuance of the March 6, 2017, trial date. *See generally id*. The plaintiffs argue that the supplemental reports were completed as quickly as possible after the court's December 9, 2016, Order. Pls.' Resp. 3–9. The plaintiffs alternatively argue that, even if their supplemental reports are untimely, the court should permit the supplementation under the five-part balancing test discussed in *Hoyle v. Freightliner, LLC*, 650 F.3d 321 (4th Cir. 2011). *Id*. at 9–11.

## II.   Legal Standard

Rule 26(a)(2)(A) requires that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—

prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). In regards to the duty to supplement disclosures, the Federal Rules of Civil Procedure state the following:

> (e) Supplementing Disclosures and Responses.
>
>> (1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>>
>>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>>
>>> (B) as ordered by the court.
>>
>> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e). Rule 37 of the Federal Rules of Civil Procedures provides for sanctions in the event a party fails to properly disclose or supplement a disclosure:

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). "The court has 'broad discretion' to determine whether an untimely disclosure is substantially justified or harmless." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). In determining whether nondisclosure of evidence is substantially justified or harmless, the Fourth Circuit considers the following factors:

(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Hoyle*, 650 F.3d at 329 (citing *Sherwin-Williams Co.*, 318 F.3d at 596).

### III.   Discussion

Ethicon argues that the plaintiffs' disclosure of the supplemental expert reports is "plainly untimely and prejudicial." Defs.' Mot. 4. According to Ethicon, "the *Hoyle* factors support striking these untimely supplemental reports." *Id.* First, Ethicon states that it was unfairly surprised because the disclosures came more than five months after the close of discovery. *Id.*

> Defendants have always maintained that safer alternative design was part of Plaintiffs' prima facie case, and Plaintiffs' original expert reports included opinions about safer alternative designs. The alternative designs Plaintiffs' experts now propose in their supplemental reports were in existence at the time of their original reports, and yet they did not include them. They have done so now to the unfair surprise of Defendants.

*Id.* at 4–5. Ethicon also argues that the second *Hoyle* factor weighs against the plaintiffs because it cannot cure the surprise within the current pretrial deadlines. *Id.* at 5 ("There is no way to cure the prejudice of allowing new Plaintiffs' expert opinions at this time without reopening all expert discovery and motions practice."). Relatedly, Ethicon argues that the third *Hoyle* factor weighs against the plaintiffs because the court would need to "reopen *Daubert* motions, motions in limine, and dispositive motion practice . . . . All of this would be impossible to do while still maintaining the upcoming March 6 trial date." *Id.* Regarding the fourth *Hoyle* factor, Ethicon argues that the plaintiffs have not been diligent and have been given "ample opportunity to develop their safer alternative design evidence before now." *Id.* Ethicon states that the plaintiffs "did not act diligently in waiting over one month

5

after the Court's December 9, 2016 Order before serving their supplemental reports. Nor did they provide Defendants or the Court with notice that they intended to serve supplemental reports." *Id.* at 6 (emphasis removed). Finally, Ethicon concedes that the fifth *Hoyle* factor favors the plaintiffs. *Id.* ("Certainly, evidence of safer alternative design is important to the Plaintiffs' case.").

The plaintiffs oppose Ethicon's Motion on three grounds. First, the plaintiffs argue that because the court had previously ruled that a safer alternative design was not a necessary element of the plaintiffs' prima facie case, they had to supplement the expert reports based on the court's December 9, 2016, Order. Pls.' Resp. 2. Second, the plaintiffs argue that the supplemental reports were "not confined to the feasible alternative design arguments; they also addressed the issue of specific causation in the December 9, 2016 [O]rder. . . ." *Id.* Finally, the plaintiffs argue that they "made every effort to incorporate relevant statements made by their experts during depositions that were not addressed in the initial reports." *Id.* at 3.

### A.   General Causation Supplemental Reports (Safer Alternative Design)

The plaintiffs have failed to show that their disclosure was a true supplementation under Rule 26(e) of the Federal Rules of Civil Procedure. Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009). "To construe [Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit

additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (citation omitted). "A party has a clear obligation to disclose and supplement expert witness information in a timely fashion, '[b]ut this duty does not permit a party to make an end-run around the normal timetable for conducting discovery.'" *Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp.*, No. 2:09-cv-01278, 2011 WL 320909, at *2 (S.D. W. Va. Jan. 28, 2011) (Goodwin, J.) (quoting *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006)). "Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002).

The plaintiffs are only partially correct when they state that "the rule directs parties to supplement expert reports that are 'incomplete or incorrect' before the deadline for pretrial disclosures." Pls.' Resp. 3. Rule 26(e) requires supplementation in a timely manner "if the party learns that *in some material respect* the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e) (emphasis added). The plaintiffs state the following: **"Plaintiffs believe that their original reports contained sufficient information to make a prima facie case, as to both the existence of a safer alternative design and also to specific causation."** Pls.' Resp. 8–9 (emphasis removed). Thus, the plaintiffs cannot rightfully argue that any previous expert report as to these

topics is "in some material respect" incomplete or incorrect because the plaintiffs point out that the prior reports are sufficient to present their respective cases. Moreover, every remaining plaintiff in these consolidated cases, except one, opposed summary judgment as to their respective strict liability–design defect claims on the grounds that they have provided sufficient evidence to prove the existence of a safer alternative design, even though they argued such a showing is not required.[1] *See* ECF Nos. 1260, 1268, 1271, 1278, 1281, 1293, 1297, 1301, 1303, 1313, 1317, 1321, 1322, 1328, 1336, 1337, 1343, 1347, 1351, 1355, 1362, 1367, 1420, 1424, and 1433. Accordingly, the court **FINDS** that the plaintiffs had no duty to supplement their general causation expert disclosures regarding the existence of a safer alternative design under Rule 26(e); thus, Rule 37(c) and the *Hoyle* factors do not apply here. *See* Fed. R. Civ. P 37(c) (providing a sanction when a party fails to provide information or identify a witness as required by Rule 26(a) or (e)); *see also Hoyle*, 650 F.3d at 329 (applying the relevant factors to determine whether nondisclosure of evidence is substantially justified or harmless). Instead, the plaintiffs attempted to bolster their positions with discovery disclosures outside of the discovery deadline. Accordingly, Ethicon's Motion on this point is **GRANTED**.

---

[1] On February 1, 2017, the Fourth Circuit held in a published opinion that West Virginia's strict products liability law requires a plaintiff to identify a reasonable alternative design in a design defect case. *Nease v. Ford Motor Co.*, No. 15–1950, slip op. 31–32 (4th Cir. Feb. 1, 2017) ("While it is true that West Virginia law on the matter is not crystal clear, we agree with Ford that *Morningstar* 'can only be read to require the production of evidence on reasonable alternative design, to gauge what 'should have been.' Although *Morningstar* does not use the phrase 'alternative design,' a plaintiff in a design case, for all practical purposes, must identify an alternative design in order to establish the 'state of the art.'" (citations omitted)).

### B.    Specific Causation Supplemental Reports

The plaintiff argues that the court's December 9, 2016, Order "addressed the issue of specific causation—an issue that Plaintiffs could not have predicted would be addressed based on the new pattern jury instruction." Pls.' Resp. 7. In the Order, the court stated the following:

> Once the trier of fact determines that the plaintiff has satisfied the risk-utility test, the product's design is considered defective as to the design feature singled-out by the plaintiff. To prevail, however, the plaintiff must still satisfy the entirely separate issue of whether the defective design *proximately caused* the plaintiff's injury. These steps must be repeated for each design feature that a plaintiff alleges is defective.

Mem. Op & Order 11 [ECF No. 1525]. The plaintiffs argue that at first blush, this statement appears to conflict with a previous ruling by this court in another case. Pls.' Resp. 7; *see also Campbell v. Bos. Sci. Corp.*, No. 2:12-cv-08633, 2016 WL 5796906, at 5 (S.D. W. Va. Oct. 3, 2016) (Goodwin, J.) ("To begin, the law in West Virginia, on which the jury was properly instructed, does not require evidence of a specific design flaw to succeed on a claim for strict liability." (citing Syl. pt. 3, *Anderson v. Chrysler Corp.*, 403 S.E.2d 189 (W.Va. 1991))). The court recognizes that under the law of West Virginia, "[a] plaintiff is not required to establish a strict products liability cause of action by identifying the specific defect that caused the loss, but instead may permit a jury to infer the existence of a defect by circumstantial evidence." *Bennett v. Asco Servs., Inc.*, 621 S.E.2d 710, 717 (W. Va. 2005). When a plaintiff does identify specific product defects, however, the plaintiff must establish proximate causation as between the identified defect and the injury sustained. *See*

*Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 682 (W. Va. 1979) ("We do state that [strict products liability] rests in tort, and that the initial inquiry, in order to fix liability on the manufacturer, focuses on the nature of the defect and whether *the defect was the proximate cause of plaintiff's injury*." (emphasis added)). Thus, these two methods of proving a strict products liability case are equally permitted under West Virginia law.

The court's December 9, 2016, Order did not limit the plaintiffs' ability to present their cases under the "malfunction" theory announced in *Anderson*. *See* Syl. pt. 3, *Anderson*, 403 S.E.2d at 190 ("Circumstantial evidence may be sufficient to make a *prima facie* case in a strict liability action, even though the precise nature of the defect cannot be identified, so long as the evidence shows that a malfunction in the product occurred that would not ordinarily happen in the absence of a defect. Moreover, the plaintiff must show there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction."). The law of West Virginia remains unchanged on this issue. Thus, to the extent that the plaintiffs' supplemental disclosures are based on the misconception that the court altered the plaintiffs' burden regarding proof of specific causation, those supplemental disclosures are inappropriate. Ethicon's Motion as to this point is **GRANTED**.

### C.    Deposition Testimony and Scientific Literature

The plaintiff states that "Rule 26(e)(2) requires that opinions given in depositions be added to the reports, if not already included." Pls.' Resp. 8. The

10

plaintiffs further state that "where experts gave new opinions in depositions, or further elaborated on existing opinions that the expert is likely to give at trial, Plaintiffs also updated the expert reports to so reflect." *Id.* Additionally, the plaintiffs state that "some of the supplemental reports include references to scientific literature that was not available at the time of the original reports, to which the expert might refer while testifying at trial." *Id.* Again, the plaintiffs have misapplied Rule 26(e).

While the plaintiffs are correct that they had a duty to supplement the expert reports to reflect information provided by an expert during his or her deposition, Rule 26(e) requires that supplementation be timely. *See* Fed. R. Civ. P. 26(e)(1), (2). The discovery deadline in these cases was July 25, 2016. Fourth Am. Docket Control Order 5 [ECF No. 258]. Yet the plaintiffs waited until January 2017 to disclose any supplementation based on deposition testimony. These supplementations are simply untimely. *See e.g.*, *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (determining that just because supplementation may occur at any time prior to the pretrial disclosure deadline, a party may not simply hold onto information until the pretrial deadline).

The plaintiffs have also failed to make any compelling argument regarding supplementation based on previously unavailable scientific literature. First, the plaintiffs indicate that only "*some* of the supplemented reports include references to scientific literature that was not available at the time of the original reports." Pls.' Resp. 8 (emphasis added). The plaintiffs have not identified *which* supplemental

11

reports rely on previously unavailable scientific literature. Second, the plaintiffs have not stated *when* the literature *became* available, preventing the court from assessing the timeliness of the supplementation. Last, the plaintiffs state that the relevant expert(s) "*might refer*" to the previously unavailable scientific literature at trial, indicating that the previously unavailable scientific literature is not crucial to their cases. *Id.* (emphasis added).

The *Hoyle* factors weigh against the plaintiffs here. Ethicon's surprise is justified given that discovery closed in July 2016. Ethicon's ability to cure the surprise is also limited due to the lateness of the disclosure as compared to the March 6, 2017, trial date. Further, Ethicon makes a strong argument that allowing these supplemental reports will disrupt the current trial schedule, as there is now little time for Ethicon to review the many new opinions offered and the methodologies on which they are supported. The plaintiffs have also not explained why it took them over five months to supplement the reports after depositions had been completed. Further, the plaintiffs have not explained when relevant scientific literature first became available. Last, the plaintiffs have not explained the importance of the deposition and literature supplementations as they relate to their cases. Accordingly, the court **FINDS** that the untimely supplementations are not substantially justified or harmless. *See Hoyle*, 650 F.3d at 329. Accordingly, Ethicon's Motion on this point is **GRANTED**.

12

IV.    **Conclusion**

For the reasons provided above, the court orders that Defendants' Motion to Strike Plaintiffs' Supplemental Expert Reports [ECF No. 1534] is **GRANTED**. The court **ORDERS** that the plaintiffs' supplemental expert reports are **STRICKEN**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      February 2, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE